UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIC NEAL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:25-cv-11777-IT |
| VALERIE MCGILVREY, | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

August 27, 2026

TALWANI, D.J.

Pending before the court is Defendant Valerie McGilvrey's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim [Doc. No. 36] as to Plaintiff Eric Neal's Complaint [Doc. No. 1]. For the reasons set forth below, Defendant's Motion to Dismiss [Doc. No. 36] is GRANTED as to lack of personal jurisdiction and DENIED as moot as to failure to state a claim.

## I. Procedural Background

In his pro se Complaint [Doc. No. 1] against McGilvrey, Neal brings two claims: defamation per se (Count I); and intentional infliction of emotional distress (Count II). Id. ¶¶ 16–26. In response, McGilvrey, also proceeding pro se, has moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and, in the alternative, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss 1, 3 [Doc. No. 36].[1]

[1] Prior to filing the pending motion, McGilvrey filed an Answer [Doc. No. 12], Counterclaim [Doc. No. 13], and First Amended Counterclaim [Doc. No. 21] in response to Neal's Complaint [Doc. No. 1]. Where the parties are proceeding pro se, the court explained at a scheduling

## II. Legal Standard

Where the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the "prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993).

## III. Factual Background

The litigants, both proceeding pro se, have failed to provide evidence in an orderly fashion. The court finds the record as follows.

Neal resides in Middleton, Massachusetts. Opp'n Ex. 8 [Doc. No. 38]. McGilvrey is a resident of Montgomery, Texas. Id.; Answer ¶ 5 [Doc. No. 12].

Neal does not allege in the Complaint [Doc. No. 1] or offer any evidence indicating that he has ever met or interacted with McGilvrey in person. Instead, Neal and McGilvrey communicate with and about each other on various social media platforms, including X. See, e.g., Compl. ¶¶ 9–11, 13 [Doc. No. 1] (containing images of McGilvrey's profiles and posts on X); Opp'n Exs. 1–4 [Doc. No. 38] (similar); Answer Ex. A [Doc. No. 12-1] (containing images

---

conference that if McGilvrey pursued a counterclaim before the court addressed the personal jurisdictional issues, she would thereby waive that defense. See Elec. Clerk's Notes [Doc. No. 33]. The court subsequently granted without prejudice McGilvrey's Motion to Voluntarily Dismiss Counterclaim [Doc. No. 29]. See Elec. Order [Doc. No. 31].

of posts published by Neal and McGilvrey on X and at least one "chat" on Facebook); Aff. of Valerie McGilvrey ¶¶ 2–5 [Doc. No. 12-2] ("McGilvrey Aff.") (describing ongoing social media interactions between Neal and McGilvrey in 2024 and 2025).[2]

Neal operates an X account under the name "The Skip Tracer" and uses the handle "@toomuchintel." See Compl. ¶ 11 [Doc. No. 1]; Answer Ex. A, at 1–8, 10–12, 15–16 [Doc. No. 12-1]. McGilvrey operates two X accounts: (1) an account that displays McGilvrey's name but uses "@Skipvue" as a handle (the "@Skipvue account"), see Compl. ¶¶ 9, 11 [Doc. No. 1]; Opp'n Exs. 1–4 [Doc. No. 38]; and (2) an account that displays the name "The Skip Tracer (Exposing Eric Neal)" and uses "@the_skiptracer" as a handle (the "@the_skiptracer account"), see Compl. ¶¶ 10–11, 13 [Doc. No. 1]; Answer ¶ 13 [Doc. No. 12]; Opp'n Exs. 2–3 [Doc. No. 38].

Beginning no later than December 2024, and continuing through approximately June 2025, Neal and McGilvrey repeatedly posted about each on X, trading increasingly inflammatory insults and making various claims about each other's conduct and associates. See Compl. ¶¶ 9–11, 13 [Doc. No. 1]; McGilvrey Aff. ¶ 2 [Doc. No. 12-2]; Opp'n Exs. 1–4 [Doc. No. 38].The parties also accused each other of disclosing their respective personal information online, such as Social Security numbers and vehicle registration details. See Opp'n Ex. 5 [Doc. No. 38]; Opp'n Ex. 9 [Doc. No. 38]; McGilvrey Aff. ¶¶ 5–9 [Doc. No. 12-2].

---

[2] Throughout the Complaint [Doc. No. 1], Neal has included screenshot images of various social media posts and a partial screenshot image of the landing page for one of McGilvrey's accounts. See id. ¶¶ 9–11, 13. In her Answer [Doc. No. 12], McGilvrey asserts that "[t]he posts speak for themselves" and "[t]o the extent the allegations mischaracterize the posts, they are denied." Id. ¶¶ 9–11. As to the landing page, McGilvrey "affirms that she has control over" the associated account. Id. ¶ 13. Where McGilvrey does not dispute the authenticity of the images included in the Complaint [Doc. No. 1], and where Neal is proceeding pro se, the court treats the images as exhibits submitted with the Complaint [Doc. No. 1].

In his two-count Complaint [Doc. No. 1], Neal focuses his defamation allegations on McGilvrey's X posts in February, April, and June 2025. Id. ¶¶ 10–12. Neal alleges that such posts are representative of McGilvrey's activity regarding Neal on other social media platforms and were "posted publicly, using [Neal]'s full name, verified handle, business name, and address, and frequently tagged [Neal] or responded to his public content to increase visibility." Id. at ¶ 10.

## IV. Discussion

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

### A. *Due Process Requirements*

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle, 70 F.3d at 1388 (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). A court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

#### 1. General Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). If an individual defendant is not domiciled in the forum, the defendant must "engage in

continuous and systematic general business contacts that approximate physical presence" in the forum. K.O. v. Sessions, 436 F. Supp. 3d 442, 449 n.3 (D. Mass. 2020) (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)).

According to the available record, McGilvrey resides in Texas. See Answer ¶ 5 [Doc. No. 12]; Opp'n Ex. 8 [Doc. No. 38]. Neal does not offer any evidence indicating that McGilvrey maintains another residence in Massachusetts, owns property in Massachusetts, is employed in Massachusetts, does business in Massachusetts or with any Massachusetts-based entities, or otherwise has any "continuous systematic" contact with Massachusetts. See, e.g., Brown v. Dash, No. 20-10980-FDS, 2020 WL 6806433, at *7 (D. Mass. Nov. 18, 2020) (no general jurisdiction in Massachusetts federal district court over a California resident who was not employed in Massachusetts, did not own any property in Massachusetts, and did not have "other continuous systemic contact with Massachusetts"). Accordingly, this court may not assert general jurisdiction over McGilvrey.

2. Specific Jurisdiction

"Specific personal jurisdiction . . . may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Warren Env'tl, Inc. v. Source One Env'tl, Ltd., No. 18-11513-RGS, 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

**a. Relatedness**

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" Baskin-Robbins, 825 F.3d at 35 (quoting Pritzker, 42 F.3d at 61). If, however, "the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect[,]" the court must "steadfastly reject the exercise of personal jurisdiction[.]" Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

Here, Neal, a Massachusetts resident, alleges that McGilvrey, while living in Texas, posted to her social media accounts defamatory statements about him, including a reference to Neal's father's purported criminal record in Massachusetts. See Compl. ¶ 11 [Doc. No. 1]. McGilvrey's statements were posted publicly, with some containing Neal's first and last name, and most receiving at least a handful of comments or "likes" from other users. See, e.g., Opp'n Ex. 2 [Doc. No. 38] (including a post referring to "Eric Neal" that received five "likes" and one comment); Opp'n Ex. 3 [Doc. No. 38] (including a post referring to "Eric Neal[,]" which received seven "likes" and two comments, and a post referring to "Eric S. Neal"). The allegedly defamatory statements were thus accessible for anyone to view and interact with, presumably including Massachusetts residents. See Sensitech Inc. v. LimeStone FZE, 548 F. Supp. 3d 244, 256 (D. Mass. 2021) (defendant's allegedly defamatory LinkedIn postings about a Massachusetts business "which were circulated and accessible to residents in the Commonwealth" sufficient to infer "the injury to [plaintiff] was apparently suffered in Massachusetts").

Accordingly, where Massachusetts residents could ostensibly have viewed McGilvrey's posts regarding Neal, the court assumes the alleged injuries to Neal were at least in part suffered in Massachusetts, likely satisfying the relatedness prong of the personal jurisdiction analysis. See id.; accord Brown, 2020 WL 6806433, at *9 (observing that the First Circuit has "left open the possibility that a plaintiff who demonstrated a much larger pool of potential readers or viewers of defamatory content, even without proof that those readers actually apprehended the content, could constitute 'circumstantial evidence . . . sufficient to create a presumption of publication'" (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 21–22 (1st Cir. 2018))).

**b. Purposeful Availment**

"The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court adopted an "effects" test for determining purposeful availment in defamation cases. In that case, a California resident filed suit in California against a group of Florida journalists for allegedly publishing a libelous article about her. Id. at 784. The Court held that California's assertion of jurisdiction over the defendants was consistent with due process because the defendants' "intentional conduct in Florida [was] calculated to cause injury to respondent in California." Id. at 791. More specifically, the Court reasoned as follows:

> [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner[s] . . . wrote and . . . edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works

> and in which the [publication] has its largest circulation. Under the circumstances, petitioners must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article.

Id. at 789–90 (quotations omitted).

In Walden v. Fiore, 571 U.S. 277 (2014), the Supreme Court clarified Calder's effects test for purposeful availment: "Our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 285. The proper inquiry is thus whether a defendant has "purposefully reached out beyond their State and into another[.]" Id. (citation modified). The plaintiff "cannot be the only link between the defendant and the forum[,]" as "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id.; see United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001) (opining that Calder "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction" (quotations omitted)).

Federal circuit courts have applied Calder and Walden to defamation cases arising from the use of social media. The Sixth Circuit, for example, affirmed a Tennessee district court's finding of personal jurisdiction over a nonresident defendant where the defendant's allegedly defamatory social media posts concerned the "Tennessee activities of a Tennessee resident[,]" "impugned the professionalism of an executive whose careers was centered in Tennessee[,]" concerned information "drawn from Tennessee sources[,]" and was posted with the intent that "the brunt of the harm would befall [the plaintiff] in Tennessee." Johnson v. Griffin, 85 F.4th 429, 433 (6th Cir. 2023); see id. ("[Defendant's] actions have more parallels to Calder than to Walden.").

Although the panel arrived at a different result, the Eleventh Circuit in Moore v. Cecil, 109 F.4th 1352 (11th Cir. 2024), likewise assessed an Alabama district court's jurisdiction over a defendant in a "tweet-based defamation[]" case through the lens of Calder and Walden. Moore, 109 F.4th at 1364. Analogizing to Walden, the Eleventh Circuit held that personal jurisdiction could not be maintained where the plaintiff failed "to show that Alabama was the focal point of [the defendant's] tweets." Id. In particular, the panel noted the lack of evidence demonstrating "that the four tweets in question were directed at Alabama or that [the defendant] intended to target an Alabama audience as opposed to his followers or a national audience generally." Id.; accord Blessing v. Chandrasekhar, 988 F.3d 889, 906 (6th Cir. 2021) (similar); Sensitech Inc., 548 F. Supp. 3d at 256–57 (similar).

Here, the available record is an insufficient basis on which to conclude that McGilvrey "directed" her social media posts at Massachusetts or "intended to target a[] [Massachusetts] audience[,]" rather than the followers of her account or a general audience. Moore, 109 F.4th at 1364. Insofar as McGilvrey "tagged" Neal or "responded to his public content[,]" Compl. ¶ 10 [Doc. No. 1], the court may reasonably infer that McGilvrey intended for Neal to see her posts. It does not necessarily follow, however, that McGilvrey knew or intended that her posts would be viewed in Massachusetts generally or by other Massachusetts residents. See Sensitech Inc., 548 F. Supp. 3d at 257 (declining to find specific jurisdiction where plaintiff "proffered no factual allegation indicating that [the defendant] knew any of his posts would be viewed in Massachusetts by Massachusetts residents, let alone that he intended for them to be viewed here"); see also Walden, 571 U.S. at 285 (purposeful availment not satisfied if the "only link" between the defendant and the forum state is the plaintiff).

Neal argues McGilvrey's conduct is "directly related to Massachusetts" because, *inter alia*, McGilvrey knew Neal resided in Massachusetts; "repeatedly referenced [his] Massachusetts address, hometown, family members residing in Massachusetts, and Massachusetts-based events in her publications"; and "expressly discussed [Neal's] residence in Middleton, Massachusetts, his family history within the Commonwealth, and alleged criminal conduct purportedly occurring here." Opp'n ECF 2 [Doc. No. 38].

To that end, one of McGilvrey's X posts encouraged its viewers to register for a website that would grant the registrant access to audio of a legal proceeding involving Neal. Opp'n Ex. 4 [Doc. No. 38]. According to the information in the post, the proceeding took place in Haverhill District Court, with McGilvrey providing the date, relevant timestamps, and case docket number. Id. In other X posts, McGilvrey referenced, *inter alia*, Neal's attendance at "Crossroads School inside Danvers High School[,]" Opp'n Ex. 3 [Doc. No. 38], and questioned whether Neal is "one of the P Diddy east coast connections[,]" Compl. ¶ 11 [Doc. No. 1].

Although these posts reference Neal's connection to Massachusetts specifically or the region more generally, they are not presented in such a way that the court may infer McGilvrey sought for a Massachusetts audience to view her posts, particularly where Neal does not allege that any Massachusetts resident, other than himself, viewed or engaged with any of McGilvrey's posts. See Walden, 571 U.S. at 285; Swiss Am. Bank, Ltd., 247 F.3d at 623. Instead, such references are better characterized as descriptive information in McGilvrey's various statements and opinions, directed at whomever "follows" or views her social media accounts.[3] That the

---

[3] Compare BroadVoice, Inc. v. TP Innovations LLC, 733 F. Supp. 2d 219, 226 (D. Mass. 2010) (no purposeful availment where, *inter alia*, defendant's "defamatory website was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world)[,]" the defendant "did nothing to incite residents of Massachusetts . . . to

"targeted impersonation account" alleged by Neal specifically references his business in Plaistow, New Hampshire, rather than any Massachusetts address or connection, underscores the lack of evidence going to McGilvrey's intentional aiming of her statements at a Massachusetts audience. See Compl. ¶ 13 [Doc. No. 1] (containing a screenshot image of the landing page for McGilvrey's @the_skiptracer account on X).

Neal also points the court to an October 16, 2025 Middleton Police Department "[n]arrative" describing a phone call between McGilvrey and a police officer about her "persistent problem involving Eric Neal[,]" Opp'n Ex. 5 [Doc. No. 38]; emails purportedly sent to a Middleton Police Department detective about Neal on August 2, 2025, and on October 10, 2025, Opp'n Exs. 6–7 [Doc. No. 38]; a Middleton Police Department "incident report" regarding "[s]uspicious [a]ctivity" in "[c]yberspace[,]" in which Neal is listed as a "victim[,]" a Methuen, Massachusetts woman is listed as a "witness[,]" and both that woman and McGilvrey are listed as "involved" parties, Opp'n Ex. 8 [Doc. No. 38]; and a "summary of facts" from a Middleton Police officer apparently related to that incident report, describing Neal's "desire to press charges against McGilvrey for allegedly disseminating his SSN" on a third-party website, Opp'n Ex. 9 [Doc. No. 38]. But such activity on the part of McGilvrey is again insufficient to demonstrate

---

take up arms against [plaintiff,]" and "there [was] no evidence . . . that any Massachusetts resident (other than [one individual plaintiff]) ever actually accessed the contents of the website"), with Sindi v. El-Moslimany, No. 13-cv-10798, 2014 WL 6893537, at *9 (D. Mass. Dec. 5, 2014) (defendant purposefully availed herself of forum state by sending "emails and 'tweets'" to two universities in the forum state "disparaging" plaintiff "for the apparent purpose of harming [plaintiff's] reputation and preventing [plaintiff] from developing her business" in the forum state); and Abiomed, Inc. v. Turnbull, 379 F. Supp. 2d 90, 92 (D. Mass. 2005) (defendant purposefully availed himself of forum state by allegedly posting defamatory statements about an in-forum company on an online message board, "engag[ing] in direct dialogue" with in-forum residents in some of his message board posts, and "claim[ing] to be privy to 'inside' information" about the in-forum company and to have "contacts . . . throughout the company's organization").

that her social media posts, which form the crux of Neal's claims against her, see Compl. ¶¶ 16–26 [Doc. No. 1], "were expressly aimed at" Massachusetts. See Calder, 465 U.S. at 789.

Accordingly, Neal has not sufficiently demonstrated McGilvrey's purposeful availment of this forum. Where the court's exercise of personal jurisdiction over McGilvrey would therefore be inconsistent with constitutional due process, the court GRANTS McGilvrey's Motion to Dismiss [Doc. No. 36] to the extent McGilvrey seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2).[4]

## V. Conclusion

For the foregoing reasons, McGilvrey Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim [Doc. No. 36] is GRANTED insofar as McGilvrey seeks dismissal under Rule 12(b)(2) and DENIED as moot insofar as McGilvrey seeks dismissal under Rule 12(b)(6). Neal's Complaint [Doc. No. 1] is DISMISSED without prejudice.

IT IS SO ORDERED.

August 27, 2026

/s/ Indira Talwani
United States District Judge

[4] The court need not address specific jurisdiction under the Massachusetts long-arm statute, Mass. Gen. L. 223A, § 3, given the court's conclusion as to the constitutional due process issue. The court also need not reach McGilvrey's alternative basis for dismissal under Rule 12(b)(6).